### KELLNER, Admrx v GREER

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 4, 1935

E. T. Phillips, Youngstown, and H. L. Kerr, Youngstown, for plaintiff in error.

Wm. E. Pfau, Youngstown, for defendant in error.

**OPINION**

By ROBERTS, J.

Some criticism is made of the opinion or address of the court to the jury in directing a verdict, which consists of some seven pages, found in the bill of exceptions. The court directed the jury to return a verdict for the defendant for the reason that the evidence, construed in manner hereinafter stated, showed no negligence on the part of the defendant, as alleged in the petition, and that it did show contributory negligence on the part of the plaintiff, and for these reasons a verdict was directed. Strictly speaking, contributory negligence can only exist where there

has been negligence on the part of the defendant, to which negligence of the defendant may or can contribute. However, this is not important in the consideration of this case, which involves the proposition as to whether or not the trial court was authorized and justified in directing the jury to return a verdict for the defendant. Whether or not such court gave good reasons for his conclusions is of no particular moment. The proposition is whether the court was right in so doing, or whether, as claimed by counsel for the plaintiff, he failed to recognize the rights of the plaintiff. The trial court very properly said that the evidence under the conditions involved should be most strongly construed against the mover of the motion for a directed verdict, and most favorably for the plaintiff in the case.

Attention will now be directed to some authorities upon the proposition as to when a trial court may direct a verdict under the conditions involved in this case. Turning first to the case of **Hamden Lodge No. 517, Independent Order of Odd Fellows et v Ohio Fuel Gas Company, 127 Oh St, 469,** and it may be remarked that this is the case which repudiated the "scintilla rule" theretofore existing in this state, paragraph three of the syllabus reads:

"Upon motion to direct a verdict, the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor. But if upon any essential issue, after giving the evidence such favorable construction reasonable minds can come to but one conclusion, and that conclusion is adverse to such party, the judge should direct a verdict against him."

Paragraph four:
"When from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

Citing now the case of **Pince v Kettering, 128 Oh St, 52,** the syllabus reads:
'If the circumstances disclosed by the uncontradicted evidence are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby, it is prejudicial error for the trial court to direct a verdict."

Reference is now made to another case in the 128 Oh St, found at page 469, en-

titled Metropolitan Life Insurance Company v Huff. The syllabus reads:

"When at the close of plaintiff's evidence reasonable minds can reach no conclusion except in favor of the defendant, it is error for the court to overrule the defendant's motion for a directed verdict."

These two cases just cited in the 128 Oh St lay down the rule for opposite or opposing conditions, the one when a verdict may not be directed and the other when it may, and are based upon the case of Hamden Lodge v Gas Company, supra. So we may start with a consideration of the evidence in this case, understanding the law to be that if the circumstances disclosed by the uncontradicted evidence in the case under consideration are such that reasonable minds might reach different conclusions as to inferences to be drawn therefrom and the ultimate facts established thereby, as to first the consideration of the evidence introduced by the plaintiff regarding the alleged negligence of the defendant to determine whether a verdict might be directed upon the failure of the plaintiff to introduce evidence as required, indicating negligence on the part of the defendant, and secondly, if the evidence so indicated whether or not the evidence in the case, construed under these rules, indicates that the plaintiff was guilty on his part of proximate negligence, in either condition being a cause of the accident, and the evidence be such as is described in these authorities, the right of the court to direct a verdict may thus be determined. If the evidence introduced by the plaintiff be such that reasonable minds can reach no conclusion except in favor of the defendant, then it was the right and duty of the court to direct a verdict for the defendant; otherwise not. If, however, reasonable minds might reach different conclusions as to inferences to be drawn from the evidence, then the court is not authorized to direct a verdict, in which situation consideration should then be given to the proposition as to whether or not the plaintiff had been guilty of proximate negligence, and if reasonable minds could reach no other conclusion, then the court might direct a verdict for the defendant, notwithstanding the fact that the defendant might have been guilty of negligence. The trial court was. of the opinion that reasonable minds could reach no other conclusion than that the defendant was not guilty, and that the plaintiff was guilty of negligence. Therefore the verdict was directed.

On the night in question the plaintiff's decedent was riding in his Ford automobile southerly from Youngstown, where he had been attending church, accompanied by his two sons, one of whom was riding in the rear seat with him, and the elderly son was sitting in the front seat and operating the car. This son was nineteen years of age and had been driving an automobile for about one year. There was some ice upon this highway and about one inch of snow. As the defendant, driving southerly upon route 7, approached the village of North Lima, his right rear wheel went off from the pavement upon the berm. The driver of the car so steered it that this wheel, in four or five feet, came back on the pavement, but then the car began to skid and went about ten feet in a southeasterly direction, then turned and went in a southwesterly direction for about the same distance, then turned to the left in a southwesterly direction, crossed the highway and entered upon the driveway of a man by the name of Entriken, and when this car of the decedent was partially upon the pavement and partially upon the driveway, the Buick sedan, owned and operated by the defendant, crashed into the side of the decedent's car, and as a result of this collision the decedent died within two days thereafter. At the same time the defendant was operating his car in a northerly direction and on the right hand side of route No. 7, the pavement of which is about 20 feet wide. As he came around a curve the distance between these two cars was about 300 feet. The defendant at this time was driving his car 30 or 35 miles an hour. The decedent's car was being operated at a speed of 20 to 25 miles an hour, as indicated by the evidence. The defendant says that when the cars were 100 or 150 feet apart, and we may perhaps assume that it was 150 feet, because the defendant would be not likely to exaggerate against his own interest, the defendant noticed, as he says, that the lights of the decedent's car were weaving, and it may be assumed if the lights were weaving that the car was also weaving. This condition attracted the attention of the defendant. He says that he took his foot off from the accelerator and expresses doubt as to whether he applied the brake. It is further testified by the two sons of the decedent that in a conversation immediately after the accident the defendant said, in effect, that he observed the weaving of these lights but did not attempt. to stop his car, because he thought that the driver would be able to gain control of the car before the cars passed each other. The evidence shows

that the plaintiff's car, after regaining the pavement, traveled about sixty feet to the point of the collision. If the cars were 150 feet apart, then while the plaintiff's car was traveling 60 or 65 feet the defendant's car was traveling about 85 feet, and if driving at 30 miles per hour he would travel this distance in about two seconds, which would give an exceedingly brief time within which he might expect that the driver of the Ford car would be able to gain control and direct the course of that car so that they might pass in safety. Criticism is made of the young man driving the decedent's car that when one wheel got off from the pavement he ought to have so operated it on the berm until he had passed the car of the defendant. In this connection it may be observed that the roads were slippery, that the wheel of the car suddenly went off the pavement, the boy was confronted with an emergency requiring immediate deliberation and conclusion as to whether it was best to attempt to drive with one wheel off from the pavement or perhaps get the other right wheel also off or attempt to get back upon the pavement and under such circumstances the driver of the car should not be held to such strict accountability for his conduct as under circumstances where there is greater opportunity for deliberation. The natural impulse of the driver of an automobile, if the wheels unexpectedly leave the pavement, is to immediately attempt to bring it back on to the pavement. In so doing this driver was actuated only by such usual impulse. With an inch of snow upon the ground it can be readily understood that difficulty would be encountered in seeing just where the pavement ended and the berm began, and it does not indicate negligence that a wheel of the Ford car left the pavement under the surrounding circumstances. When the car came back upon the pavement it started skidding in the manner hereinbefore stated, and the boy did not regain control of the car nor was he able to direct its course before the accident happened. The defendant was operating a large and powerful car. He had encountered no difficulty previous to the accident. He saw the uncontrollable car of the plaintiff when the cars were presumably 150 feet apart. The condition which he observed in the weaving of the lights naturally would indicate to him that the car was out of control, and relying further, as he must or should have, that only a very few seconds would intervene between the meeting of these cars, it is passing strange that it did not occur to the driver to attempt to stop his car or to materially lessen

his speed and thereby take a reasonable precaution, which probably would add to the safety of both parties by stopping or slowing up his car, but he did not so do except to allow it to drift for a period of the way and did not really attempt to stop his car until he was within about 20 feet of the Ford. Perhaps less than half of the Ford at the time of the accident projected out on the pavement. If the defendant had lessened the speed of his car he would not have arrived at the point of the accident as quickly as he did, and as the Ford car had not quite stopped at the time of the accident, such difference in time perhaps would have allowed the Ford to have gotten wholly off from the pavement before the Buick passed. In any event, if there had been a substantial lessening of speed the defendant, by turning a few feet to the left,—there were no other cars approaching —could have gotten around the Ford car, located as it was at the time of the accident, but instead of so doing, the defendant turned his car to his right, partially off from the pavement and up upon this driveway, where they came into collision.

Perhaps it is not the proper function of this court at this time to express an opinion as to whether as a matter of fact the evidence shows under the rules hereinbefore stated that the plaintiff was guilty of negligence which would prevent a recovery, or that the defendant was not guilty of negligence which would prevent a recovery, or that the defendant was guilty of negligence which would permit a recovery. This court is, however, clearly of the opinion, which must be expressed in a determination of the issue presented, that the circumstances and conditions involved were not such that regarding them it may be said that reasonable minds might not or could not reach different conclusions with regard to the alleged negligence of the defendant and the alleged negligence of the plaintiff. It therefore follows that the trial court was not authorized or justified in directing a verdict in favor of the defendant upon either of these propositions, namely, negligence of the defendant and negligence of the plaintiff. The court could only so direct a verdict upon the assumption that reasonable minds could not differ, so far as the defendant was concerned, in the conclusion that the defendant was not guilty of any actionable negligence; neither was the court justified or authorized to direct the jury that reasonable minds could not differ or fail to conclude that the plaintiff was guilty of such negligence as would preclude a right of recovery.

It follows that the judgment of the Court of Common Pleas is reversed and the cause remanded.

Judgment reversed.

CARTER and NICHOLS, JJ, concur.